(95 Misc. Rep. 625)

GAGEN & BUTLER, Inc., v. FRANCO-AMERICAN CHEMICAL CO., Inc.

(Supreme Court, Appellate Term, First Department. June 28, 1916.)

PRINCIPAL AND AGENT ☞23(1)—SUFFICIENCY OF EVIDENCE—AGENCY.

In an action for services rendered and for goods sold and delivered to the defendant corporation, evidence *held* to show that the contract entered into by the plaintiff with another company did not contemplate any liability on the part of the defendant, either as principal or as undisclosed principal, but that exclusive credit was given to the other company.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. ☞23(1).]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Gagen & Butler, Incorporated, against the Franco-American Chemical Company, Incorporated. From a judgment rendered in favor of the plaintiff after a trial by the court without a jury, defendant appeals. Reversed, and complaint dismissed.

Argued June term, 1916, before GUY, BIJUR, and PHILBIN, JJ.

Milton Mayer, of New York City (Milton Mayer and Goodman Block, both of New York City, of counsel), for appellant.

King & Smith, of New York City (William J. Smith, of New York City, of counsel), for respondent.

PHILBIN, J.   The action was brought to recover for services rendered and electrical goods sold and delivered by the plaintiff to the defendant.   The answer was a general denial.   The defendant claims that if any liability was created, it was that of a corporation known as the Divided Metals Company.   The plaintiff says that all dealings were really with the defendant, since the Divided Metals Company was the agent of the defendant.

In September, 1915, the president of the latter company, one Britton, informed the plaintiff's president, one Gagen, that he and one Robitaille, an officer of the defendant, were in search of a building for factory purposes, and in which machinery could be installed for the grinding of aluminum.   Thereafter the three men visited and inspected a certain building.   On that occasion the nature of the electrical equipment was discussed, and Gagen's advice was asked.   Robitaille finally at that time told Gagen to go ahead and equip the building.   The former was not then connected with the Divided Metals Company.   Later it was decided to take another building instead, and Gagen examined it in the presence of Robitaille and Britton, and was told by them to go ahead with the necessary equipment.   On that occasion the latter was president of the Divided Metals Company, and Robitaille vice president, and still an officer of the defendant.   Shortly after this last meeting, and on the 18th of October, 1915, the plaintiff wrote a letter to the Divided Metals Company, saying that in accordance with the verbal instructions received from Britton it was proceeding with the installation of the electrical equipment therein stated and giving the cost of the latter.   The said company wrote, acknowledging the receipt of the above letter, and referred to changes in the work.   A letter by the Divided Metals Company to the defendant was written about this time concerning the contract with the plaintiff, and asking for a check for plaintiff for account of the Divided Metals Company.

On the 25th of October, 1915, the said company wrote plaintiff, inclosing a copy of the last letter, directing payment to the plaintiff.   The plaintiff received a check of the defendant to its order on or about the 27th of October, 1915, for $447.50.   Various bills or statements of the plaintiff, made out to the Divided Metals Company for the work, were later sent to the latter.   Certain certificates in relation to the premises in question were issued to the said company by the New York Board of Fire Underwriters.   The lease of the premises was made to the Divided Metals Company.   It would thus appear, so far as the foregoing writings were concerned, with the possible exception of defendant's check, that the transaction was with the Divided Metals Company.   The plaintiff began work on or about the 18th of October, 1915, and there is evidence to sustain its claim that it was completed according to the contract.   It was testified on behalf of the plaintiff that frequently during the progress of the work Robitaille and the treasurer of the defendant were about the premises and gave directions to the plaintiff and its workmen; but that was denied by the defendant.   It was also shown on behalf of the plaintiff that bills for the work were sent by the Divided Metals Company to the defendant, and that the latter gave checks for them to the Divided Metals Com-

pany. Both Robitaille and Britton had told Gagen that the defendant was to furnish the moneys necessary for the plaintiff's work in equipping the building.

While the plaintiff asserts that the contract was made direct with the defendant, through Robitaille, its officer, the plaintiff apparently really relies upon the theory of the alleged authority of the Divided Metals Company as its agent, and this appears to be the only ground upon which plaintiff can fasten a liability upon the defendant, in view of the plaintiff's relations with the said company, as indicated by the correspondence and bills. All that has appeared is entirely consistent with the claim of the defendant that its connection with the Divided Metals Company was simply that of one who had advanced moneys under a trade agreement, which was the fact. Gagen testified that he was told by Britton before he ever met Robitaille as to the provisions of a contract between the Divided Metals Company and the defendant.

The relations of the two companies were defined by an agreement, bearing date October 11, 1915. It provided for the advance of $3,000 by the defendant to the company from time to time, to be used in equipping and operating the latter's manufacturing plant in the city of New York. The money was to be repaid to the defendant in three months from the date of the agreement. The defendant was to have the right to retain, from moneys that might come into its hands from time to time, sums over the estimated running expenses of the company for one month. Provision was likewise made for a possible extension of the time of repayment. The defendant was given the exclusive agency for the selling of the company's output at certain specified prices. The agreement was signed on behalf of the companies by Robitaille and Britton, as presidents respectively.

The plaintiff placed some reliance upon the foregoing agreement in its contention that the defendant was the undisclosed principal of the Divided Metals Company, but I do not see how such a deduction can be drawn. It must be found that the plaintiff failed to establish that the defendant had directly or indirectly entered into any contractual relations with it. On the contrary, the conclusion is compelled that the contract expressly entered into by the plaintiff with the Divided Metals Company by virtue of the oral agreement, and confirmed by the correspondence between them did not contemplate any liability on the part of the defendant, but exclusive credit was given the other company.

Judgment reversed, with $30 costs, and complaint dismissed, with costs. All concur.